UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

James Spurlock,

    Plaintiff,

v.

Detroit Dismantling,

    Defendant.

_____/

Case No. 13-11151

Honorable Nancy G. Edmunds

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [23]

Before the Court is Defendant Detroit Dismantling's motion for summary judgment on its former laborer Plaintiff James Spurlock's Americans with Disabilities Act (ADA), 42 U.S.C. § 12112(a) and Michigan Persons with Disabilities Civil Rights Act (PWDCRA) Mich. Comp. Laws § 37.1101 et seq., disability discrimination claims. (Dkt. 23.)

Because the Court finds that Plaintiff has not brought forth evidence that Defendant regarded him as disabled and has not shown that Defendant's legitimate non-discriminatory reason for terminating him was pretext, the Court GRANTS Defendant's motion for summary judgment as to Plaintiff's disability claims, but DENIES Defendant's request for attorneys's fees and costs.

**I.**    **Facts**

On May 11, 2011, Plaintiff filled out an application to work as a laborer for Defendant. (Pl.'s Dep. at 13-14.) In that application, Plaintiff stated that he was able to perform the essential functions of the job "with or without reasonable accommodation." (*Id.* at 14.) Plaintiff says that he never developed any type of physical or mental disability that

prevented him from performing the essential functions of the job with Defendant. (*Id.*) Plaintiff also indicated on the application that he understood that his employment with Defendant was not definite and that either he or Defendant could terminate his employment at any time.[1] (Def.'s Mot., Ex. D., Pl.'s Application.)

Defendant hired Plaintiff and Plaintiff worked as a laborer from May to July, 2011. (Pl.'s Dep. at 27.) After that work period, Defendant laid Plaintiff off. (*Id.*) In December, 2011, Plaintiff began receiving unemployment benefits. (*Id.* at 89.) Plaintiff states that he does not have any reason to believe that he was laid off for any impermissible reason in 2011. (*Id.* at 27.)

A little before May 1, 2012, Defendant hired Plaintiff for a project on the University of Michigan's East Quad. (Pl.'s Dep. at 20.) Plaintiff began demolishing walls on May 1, 2012. (*Id.*) On May 2, 2012, though, Plaintiff states that Defendant's foreman, Bruce Joles, called him and told him to stay home the next day because the laborers had discovered asbestos throughout the job site. (*Id.*) Defendant did not recall Plaintiff to work for the next week or so. Plaintiff maintains that he learned, on May 10, 2012, the reason Defendant did not call him back to work. (*Id.* at 22.) Plaintiff states that, eventually, Bruce Joles told him that "the reason why [Plaintiff] was laid off was because of a safety incident that [Plaintiff]

---

[1]Plaintiff lied on his application to work for Defendant. (Pl.'s Dep. at 15.) On his application, he stated that he did not have a criminal history, which was untrue. (*Id.* at 19-20.) He explained that he lied on his application because he thought Defendant would not have hired him had he told the truth. (*Id.* at 20.) Defendant has also pointed out that Plaintiff was not truthful on his application about graduating from high school. (Def.'s Mot., Ex. C, ¶ 7.) Plaintiff also indicated on the application that all the statements he made in the application were true. (Def.'s Mot., Ex. D, Pl.'s Application.)

had with Chris Streb [(the East Quad project's safety coordinator)] at another job" at University of Michigan's Ross Business School. (*Id.* at 22.)

Plaintiff says that, even though he did not return to work on May 2, 2012, he did not know until he spoke with Defendant's general manager, John Menzo, on May 14, 2012, that he learned that Defendant had laid him off. (Pl.'s Dep. at 79.) Plaintiff recounts that, when he asked Menzo "why" Defendant laid him off, he says that Menzo did not know why. (*Id.*) He also states that he asked Defendant's vice president, Jeff Dore, and Dore also could not give a reason why Defendant was laying him off. (*Id.* at 79-80.) At the time Plaintiff was laid off, he states that he had no reason to suspect that Defendant laid him off for an impermissible reason. (*Id.* at 31-32.) Plaintiff says that he does not know whether any other laborers were not called back when he was not called back. (*Id.* at 24.) Plaintiff explains that the safety incident that Bruce Joles mentioned occurred in 2007. (Pl.'s Dep. at 22.) In 2007, while working for a different company, Plaintiff tore his labrum. (*Id.* at 26.) Plaintiff states that Chris Streb was the safety coordinator on that job in 2007. (*Id.* at 43.)

During the conversation with Joles, Plaintiff stated that Joles did not mention anything about what the safety incident was, did not mention anything about an injury, and did not mention that he knew Plaintiff had been injured. (Pl.'s Dep. at 22-23.) Plaintiff also explains that he has never learned how Joles may have learned of the incident. (*Id.* at 23.)

But Plaintiff does maintain that he "thought" Defendant laid him off for an impermissible reason. (Pl.'s Dep. at 27.)

Plaintiff recounts various reasons why Defendant could have terminated him: "[Defendant] hired the same safety coordinator as - - that was on the job that I was injured

3

on and I had an idea that maybe that might be - - that could have been the reason, or I didn't know the exact reason at that time, and I believe that it could have been because they found out I have an injury from Chris Streb or the fact that I had made a comment about the asbestos that I came across." (Pl.'s Dep. at 43.)

Plaintiff states that he did not think that Defendant would have laid him off after the University of Michigan East Quad job. (Pl.'s Dep. at 28-29.) But he does explain that he knew it was his responsibility to find a different assignment. (*Id.* at 29.)

Plaintiff acknowledges that he did not work for Defendant year-round and that he did not expect to work for Defendant year-round. (Pl.'s Dep. at 30.) But Plaintiff does state that he believed that generally, if a laborer was a good worker for Defendant, he would stay working for Defendant year-round. (*Id.*) He concedes, though, that no one from Defendant told him that he would be working year-round. (*Id.*)

Plaintiff states that he believes his reason why Defendant terminated him was the correct one because Defendant "had no other reason to lay [him] off. [Defendant was] gearing up. [Defendant] could not find enough laborers for [the East Quad] job." (Pl.'s Dep. at 43.)

Defendant has submitted Streb's affidavit. (Def.'s Mot., Ex. H, Streb Aff.) Streb states that he was the safety manager at the University of Michigan East Quad project in May, 2012. (*Id.* ¶ 1.) He adds that he was an independent contractor for Defendant and was not employed by it. (*Id.*) He states that he did not have any authority to hire or fire Defendant's employees. (*Id.*) He explains that, in May, 2012, he "never knew of [Plaintiff] having any physical condition which would prevent him from being employed as a laborer" on the East Quad project. (*Id.* ¶ 2.) He further explains that he did not perceive Plaintiff as having any

4

such physical condition that could be regarded as a disability. (*Id.*) He ends, "I never told anyone or otherwise suggested to anyone at [Defendant] that [Plaintiff] had a physical condition." (*Id.* ¶ 3.)

Dore is Defendant's vice present. (Def.'s Mot., Ex. I, Dore Aff. ¶ 1.) Dore explains that Defendant is a signatory to collective bargaining agreements (CBAs) with unions in Ann Arbor and Detroit, Michigan. (*Id.* ¶¶ 2, 3.) The CBAs each cover specific and exclusive geographic areas in Michigan. (*Id.*) The CBAs require Defendant to use laborers from the local union in the geographic area in which Defendant is performing work. (*Id.* ¶ 4.) Dore states that the CBAs provide that Defendant must use a specific ratio of union members in every project in the respective geographic area. (*Id.* ¶ 5.)

Dore explains Plaintiff's time with Defendant. (Dore ¶ 7.) Dore states that Defendant employed Plaintiff as a laborer on April 2, 2012, to work on the First National Building project in Detroit. (*Id.* ¶ 7.) Nine days later, at the completion of the project, Defendant laid Plaintiff off. (*Id.* ¶ 8.) On April 18, 2012, Defendant hired Plaintiff again for a First National project. (*Id.*)

Dore states that, on May 6, 2012, Defendant hired Plaintiff to work on the University of Michigan East Quad project. (Dore. Aff. ¶ 9.) Dore explains that "Plaintiff worked three [] days on that project as a result of work established to allow for asbestos abatement." (*Id.* ¶ 10.) Dore then states that Defendant laid Plaintiff off on May 7, 2012.[2] (*Id.*)

---

[2]The Court notes the discrepancy in Dore's affidavit–for he stated that Defendant hired Plaintiff on May 6, 2012 and that Plaintiff worked on the project for three days. But then Dore stated that Defendant laid Plaintiff off on May 7, 2012.

5

Dore offers that he chose not to rehire Plaintiff after May 7, 2012 because Plaintiff had poor attendance in 2012–with many unexcused absences–while working for Defendant. (Dore Aff. ¶¶ 11, 12.)  Dore also states that Plaintiff had "difficulty with fellow employees." (*Id.* ¶ 12.) Dore explains that he "was never made aware [that Plaintiff] had any prior injuries or physical limitations. (*Id.* ¶ 13.)  He adds that nor did he ever perceive Plaintiff as having any physical condition which would limit or prevent his working as a laborer for Defendant.  (*Id.* ¶ 14.)  Dore also states that he was unaware that "any management employee" held such a perception of Plaintiff.  (*Id.* ¶ 15.)

When Defendant laid off/did not recall Plaintiff in May, 2012, Dore states that it also laid off/did not recall six other laborers on the University of Michigan East Quad Project. (Dore Aff. ¶ 16.)

Dore states that he is unaware whether Plaintiff "ever sought or reapplied for employment with" Defendant after May 8, 2012.  (Dore Aff. ¶ 17.)

## II.  Rule 56 summary judgment standard

It is well established that summary judgment under Federal Rule of Civil Procedure 56 is proper when the movant "shows that there is no genuine dispute as to any material fact, and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *U.S. SEC v. Sierra Brokerage Services, Inc.*, 712 F.3d 321, 326-27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)) (quotations omitted). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* Furthermore, the "substantive law will identify which facts are material, and summary judgment will not lie if

the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

When considering the material facts on the record, a court must bear in mind that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

### III. Analysis

#### A. Plaintiff has not brought forth sufficient evidence of a prima facie case of ADA or PWDCRA discrimination and, even if he could, he has not shown that Defendant's reasons for terminating him were pretext for disability discrimination

Plaintiff has neither brought forth a prima facie case of disability discrimination nor brought forth evidence that Defendant's reasons for terminating him were pretext for discrimination. Plaintiff relies solely on one statement regarding a "safety incident" that one of Defendant's employees made. Even if true, the statement does not create an inference that Defendant was disabled or that Defendant believed him to be disabled.

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "Claims under the PWDCRA 'essentially track those under [the ADA].'" *Demyanovich v. Cadon Plating & Coatings, LLC*, ___ F.3d ___, ____ WL ____ (6th Cir. Mar. 28, 2014)(citation omitted, insertion in *Demyanovich*.).

To establish a prima facie disability discrimination case, Plaintiff must show that (1) he is disabled, (2) he is otherwise qualified to perform the essential functions of a position,

with or without accommodation, and (3) he suffered an adverse employment action because of his disability.[3] *Demyanovich*, *Demyanovich v. Cadon Plating & Coatings, LLC*, ___ F.3d ___, ____ WL ____ (6th Cir. Mar. 28, 2014) (citation omitted). Plaintiff must also establish that his disability was a "but for" cause of the adverse employment action. *Id.* (citation omitted).

A person is disabled under the ADA when he has "a physical or mental impairment that substantially limits one or more major life activities of such individual;" when there is a "record of such an impairment;" or he is "regarded as having such an impairment[.]" 42 U.S.C. § 12102(1). An individual can establish "being regarded as having such an impairment" "if the individual establishes that he or she has been subjected to an action prohibited . . . because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).

When a plaintiff brings a discrimination claim under the "regarded as" theory, he "no longer need[s] to demonstrate that [his] employer believed them to be substantially limited in a major life activity." *Banaszak v. Ten Sixteen Recovery Network*, 12-12433, 2013 WL 2623882, at *4, n. 4 (E.D.Mich. June 11, 2013) (Ludington, J.). Under a "regarded as" claim, a plaintiff using indirect evidence must demonstrate that: (1) he suffered an adverse action because of some impairment (whether real or imagined); (2) that he is otherwise

---

[3]Plaintiff offers circumstantial evidence that Defendant discrimination against him based on his alleged disability. The Court therefore uses the *McDonnell Douglas* burden-shifting framework to analyze his claim.

8

qualified for the job; and (3) the position remained open or the plaintiff was replaced by a non-impaired person. *Id.*

If a plaintiff can establish a prima face case of discrimination, then the defendant has the opportunity to rebut the presumption of discrimination by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *Gribcheck v. Runyon*, 245 F.3d. 547, 550 (6th Cir. 2001) (citation omitted). If the defendant brings forth such a reason, then to still succeed on a claim, a plaintiff must then prove, by a preponderance of the evidence, that the reasons the defendant offers were pretext for discrimination. *Id.* (citation omitted). A court must ultimately ask "did the employer fire the employee for the stated reason or not?" *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012) (citation omitted). To aide in that ultimate question's answer, courts have generally asked three questions: (1) does the employer's proffered reason for termination have any basis in fact; (2) did the reason actually motivate the employer's action; or (3) were the proffered reasons sufficient to motivate the employer's actions? *Id.* (citation omitted).

Defendant argues that Plaintiff has not established a prima facie case of disability discrimination. (Def.'s Mot. at 16.) Defendant maintains that Plaintiff has not shown that Defendant regarded Plaintiff as disabled or physically impaired. (*Id.*)

Defendant then argues that, even if Plaintiff were able to establish a prima facie case of discrimination, Plaintiff's claims still must fail because Defendant has put forth a legitimate nondiscriminatory reason for not calling Plaintiff back to work, which was not pretext. (Def.'s Mot. at 20.)

Plaintiff argues that the Court should deny Defendant's motion for summary judgment because Defendant denied him discovery, he has presented a prima facie case of

"regarded as" disability, and he has presented facts to create a material issue of fact as to whether Defendant's legitimate nondiscriminatory reason for not calling him back to work was pretext for disability discrimination.[4] (Pl.'s Resp. at 5-6.)

Here, the Court finds that Plaintiff has not met his burden to establish a prima facie case of disability discrimination, nor has he brought forth any evidence that Defendant's given reasons for laying him off were pretext for disability discrimination.

Plaintiff asserts that the fact that Joles told him that the reason he was laid off was because of a "safety incident" that occurred on a project in 2007. During that safety incident, Plaintiff tore his labrum.[5] Plaintiff asks the Court to infer from this "safety incident" comment, that Chris Streb informed Defendant that Plaintiff worked for him in 2007, that Plaintiff tore his labrum in 2007, and because of that tear, that Defendant "regarded" Plaintiff as disabled.

Plaintiff points to *Ross v. Campbell Soup Co.*, 237 F.3d 701 (6th Cir. 2001) to support his argument that Defendant regarded him as disabled. There, the plaintiff, an employee of the defendant, suffered a series of back problems which made him unable to work for the defendant for extended periods. The Sixth Circuit reversed the district court's determination that the plaintiff did not present a prima facie case of ADA disability discrimination by regarding the plaintiff as disabled. There, the Sixth Circuit pointed out

---

[4]The Court has addressed Plaintiff's discovery argument. The Court denied Plaintiff's second motion to compel witnesses for deposition. (Dkt. 34.) The Court found that Plaintiff's counsel did not diligently pursue the depositions and allowed the discovery period to lapse and only sought to reopen the issue after Defendant filed its motion for summary judgment, after the discovery period had ended. (*Id.*)

[5]The Court suspects that Plaintiff is referring to the labrum in his shoulder, although a labrum tear can also occur in the hip.

various evidence that it found supported its holding. *Ross*, 237 F.3d at 706-07. The court noted that, in denying the plaintiff a promotion, the defendant, in a memo, referred to the plaintiff's case as the "back case" and noted that the plaintiff was a "problem person." *Id.* at 707. The Sixth Circuit reasoned that the "problem person" comment could not be read in a positive light. That negative light, in connection with referring to the plaintiff's back, the court held, was the most indicative piece of evidence to support the plaintiff's claim. *Id.* at 706-07. The court also pointed out that comments were written on the memo. *Id.* at 707. These comments included references to termination and asking what next steps the defendant could take about the "problem person." *Id.* The court further stated that the memo and comments on the memo were not an isolated event, but "came in the midst of a series of events that reflect upon [the plaintiff's] back condition and upon the end of his employment with [the defendant.]" *Id.* The court recognized the difficulty of proving a "regarded as" disability claim. The court stated:

> [p]roving that an employee is regarded as disabled in the major life activity of working takes a plaintiff to the farthest reaches of the ADA. It is a question embedded almost entirely in the employer's subjective state of mind. Thus, proving the case becomes extraordinarily difficult. Not only must a plaintiff demonstrate that an employer thought he was disabled, he must also show that the employer thought that his disability would prevent him from performing a broad class of jobs.

*Ross*, 237 F.3d at 709. The Sixth Circuit held that the plaintiff had met the tough standard of proving the defendant's state of mind. The court reasoned that there was "substantial evidence" that the defendant took into consideration the plaintiff's medical status in terminating the plaintiff and that the defendant "concocted a pretextual justification for that firing." *Id.* Given that evidence, the court found that the plaintiff should be entitled to

pursue a factual inquiry into the employer's state of mind as to whether the employer engaged in unlawful discrimination. *Id.*

The Court finds that there is no evidence in the record for Plaintiff to establish a prima facie case that Defendant regarded Plaintiff as disabled and that disability was the reason Defendant did not call Plaintiff back to work. Plaintiff asks the Court to infer too much. *Ross* is not persuasive, nor is it analogous. Here, Plaintiff has not presented any medical records or evidence as the plaintiff did in *Ross*. The *Ross* plaintiff had medical records and the memo and a string of events to support his case that his employer regarded him as disabled. Plaintiff has only offered the one statement. The "safety incident" comment does not create an inference that Defendant thought Plaintiff was disabled and acted upon it.

Following the approach in *Banaszak v. Ten Sixteen Recovery Network*, 12-12433, 2013 WL 2623882 (E.D.Mich. June 11, 2013) (Ludington, J.), the Court additionally notes that Plaintiff has failed to show that his position with Defendant remained open or that Defendant replaced Plaintiff with a non-impaired person. In fact, Plaintiff admitted that he did not know whether Defendant ever replaced him with another person or whether Defendant laid off others when it laid him off. Defendant has submitted an affidavit that it laid Plaintiff off along with six other laborers. Defendant has also submitted Dore and Streb's affidavits, which Plaintiff has not contested, swearing that they had no knowledge that Plaintiff had ever torn his labrum or that he was disabled or regarded as disabled in any way. Plaintiff therefore cannot not make a prima facie case as set forth in *Banaszak*.

Defendant further argues that, even if Plaintiff could set forth a prima facie case of disability discrimination, Plaintiff could not show that Defendant's legitimate reason for not calling Plaintiff back to work was pretext for disability discrimination. Dore, Defendant's

12

vice president, states that he made the decision not to recall Plaintiff because Plaintiff had had poor attendance with prior jobs with Defendant and difficulties with other laborers. (Def.'s Mot. at 20-21, Dore's Aff. ¶¶ 11-12.) Plaintiff argues that the reasons that Defendant put forth did not actually motivate it to terminate Plaintiff. (Pl.'s Resp. at 10.) Plaintiff points out that Joles told him the only reason that Defendant laid him off was because of the "safety incident" in 2007. (*Id.*) Plaintiff also points out that Menzo and Dore did not give him reasons that Defendant was not recalling him and that Dore told Plaintiff that there was no problem with his work. (*Id.*)

While the Court notes that it must accept Plaintiff's version as true, and that doing so creates some inconsistency in Defendant's employees's affidavits, the Court still does not find that there is any evidence of underlying discrimination based on any alleged disability. The Court additionally notes that Plaintiff one was of a handful of laborers that Defendant did not call back for more work. The Court therefore finds that Plaintiff could not even show that Defendant did not call him back for a legitimate business reason.

### B. The Court denies Defendant's request for attorneys's fees

Defendant asks the Court to award attorneys's fees pursuant to the ADA, 42 U.S.C. § 12205, and its "prevailing party" attorneys's fees provision. (Def.'s Mot. at 24.) That section permits a court presiding over an ADA action the discretion to award a "prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs." *Baker v. Windsor Republic Doors*, 414 F. App'x 764, 780 (6th Cir. 2011) (citing 42 U.S.C. § 12205). "A district court should award such fees to a prevailing defendant in a civil rights action only 'upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'" *Id.*

(citations omitted). "An award of attorney's fees against a losing plaintiff in a civil rights action is an extreme sanction, and must be limited to truly egregious cases of misconduct." *Id.* (citations omitted).

Here, while the Court has found that Plaintiff has not brought forth evidence to establish a prima facie case of discrimination, the Court notes that Plaintiff's case had a foundation upon which to rely. Plaintiff failed to prove his case, though. The Court therefore finds that an award of attorneys's fees or cost are unwarranted.

**IV. Conclusion**

For the above-stated reasons, the Court GRANTS in PART and DENIES in PART Defendant's motion for summary judgment.

So ordered.

                                      s/Nancy G. Edmunds
                                      Nancy G. Edmunds
                                      United States District Judge

Dated: April 17, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 17, 2014, by electronic and/or ordinary mail.

                                      s/Carol J. Bethel
                                      Case Manager